UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

In re:                                                                                  Case Number: 20-10232-cjf-7

DALE A. KRIZAN,

        Debtor.

---

TRAVIS P. KRIZAN and
RONALD V. KRIZAN,

        Plaintiffs,

v.                                                                                      Adversary Number: 20-16

DALE A. KRIZAN,

        Defendant.

---

## **DECISION**

Daniel ("Daniel") and Beverly ("Beverly") Krizan owned real estate in Sheldon, Wisconsin. Dale Krizan ("Defendant") filed a chapter 7 petition in January 2020. Plaintiffs Travis Krizan and Ronald Krizan ("Plaintiffs") filed this adversary the next month. They seek a determination that the debt owed by Defendant is nondischargeable under 11 U.S.C. § 523(a)(2)(A).

The nondischargeability issue relates to not only Defendant, but to Beverly and Scott Krizan ("Scott") as well. Both Beverly and Scott are also in chapter 7 cases and are defendants in separate adversary proceedings. The adversary proceedings have been consolidated for hearing.

Defendant moved to dismiss the adversary amended complaint for "failure to state a cause of action" of dischargeability.[1] He supported his motion with an affidavit containing various documents and pleadings from various state court proceedings.[2] This prompted responses from Plaintiffs including counter-affidavits, documents, and pleadings.[3] Both Defendant and Plaintiffs filed additional affidavits.[4] Trial is scheduled at the end of the month.

## FACTUAL BACKGROUND

Plaintiffs are pursuing nondischargeability determinations growing out of two offers on substantially the same property. Plaintiffs allege that Defendant, together with Beverly and Scott, accepted two offers on the same property. One offer was from Chad and Brenda Webster ("Webster"). The Webster offer was dated May 2, 2013.[5] It bore the signatures of Daniel, Beverly, and Scott, as well as those of the Websters. It describes the land by field number and references a survey and map. It contains no closing date and provides that Daniel, Beverly, Scott, or Dale would have an option to repurchase for a period of time.

The other offer was dated March 28, 2014, from Plaintiffs. A typed version dated March 30, 2014, replaced that offer.[6] These offers were to Daniel, Beverly, and Scott. As part of the offer, Plaintiffs paid $430,000 to the mortgagee. Plaintiffs' offer was set to close on April 7, 2014. The offer also permitted Scott, Beverly, and Daniel to rent the house and garage.

---

[1] ECF No. 24.
[2] ECF No. 26.
[3] ECF Nos. 27 through 30.
[4] ECF Nos. 33, 34, 36, and 37.
[5] ECF No. 26, p. 9.
[6] ECF No. 33, pp. 75-85.

2

Both the Webster offer and Plaintiffs' offer were signed by Daniel, Beverly, and Scott. Daniel is now deceased.

On top of the offers, other documents were created that potentially affected clear title regarding the Property. A UCC Financing Statement granting a lien on the real property at issue was filed on April 30, 2013, to an Otis Williams to secure two million dollars. Williams also received a quitclaim deed from Beverly and Daniel.[7] Then in February 2014, Daniel and Beverly executed quitclaim deeds granting life estates to Defendant and to Scott.[8] Defendant was an architect of these documents.

A closing on the Plaintiffs' offer was scheduled for April 7, 2014. It did not occur. But days before, the Websters filed a lis pendens in circuit court. The Websters moved for summary judgment as did Plaintiffs (known in the circuit court proceedings as "Intervening Krizans"). Opposing this motion, Defendant, Beverly, and Scott all claimed that, while signed, the Webster Offer was never delivered. They also insisted that the Plaintiffs' offer was the only valid contract for sale.

The circuit court found the Webster offer to be controlling and granted the Websters' motion for summary judgment. In doing so, the circuit court recognized that some of Plaintiffs' claims were still outstanding.

The summary judgment decision was appealed and affirmed. The Wisconsin Court of Appeals, District III, held that the circuit court's order

---

[7] ECF No. 33, pp. 72-74 and 69.
[8] ECF No. 33, pp. 65-68.

dismissing the misrepresentation and fraud claims were in error. In doing this the court acknowledged that Plaintiffs' "misrepresentation and fraud claims . . . have not yet been litigated."[9]

Plaintiffs allege that "defendant Dale A. Krizan assisted in a ruse or fraud to declare the Webster offer invalid." They allege he was aware of both the Webster offer and that of Plaintiffs. They also say that Defendant was the author of the "non-delivery" ruse and, effectively, creating no reason for Plaintiffs to seek to secure their position.

Defendant's defense is that he was neither a signatory nor an oral participant to any offer. Defendant's view of the claims asserted is that the sole basis is the Plaintiffs' offer. If the Defendant was not a party to the offer by signature or communication, then the complaint must be dismissed according to Defendant.

## DISCUSSION

I. THE MOTION TO DISMISS HAS BEEN CONVERTED TO A MOTION FOR SUMMARY JUDGMENT BY DEFENDANT.

A. Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[9] ECF No. 33, p. 60.

4

inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility requires "more than a sheer possibility that a defendant has acted [in the alleged way]." *Id.* The complaint must do more than "plead facts that are 'merely consistent with' a defendant's liability." *Id.* (quoting *Twombly*, 550 U.S. at 557).

Factual allegations in the complaint must be accepted as true. *Id.* But courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The consideration of a 12(b)(6) motion is restricted solely to the pleadings, which consist generally of the complaint, any attached exhibits, and supporting briefs. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). "Any further pleadings would turn the motion into a 12(c) motion for judgment on the pleadings, or if additional evidence was relied upon or introduced, the motion would be converted into a 56(c) motion for summary judgment." *Id.*

B. Summary Judgment Standard

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56). The moving party has the burden of establishing the nonexistence of a "genuine issue." 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2727,

p. 121 (4th ed.). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The existence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158 (1970). "However, the non-movant must set forth 'specific facts showing that there is a genuine issue for trial' which requires more than 'just speculation or conclusory statements.'" *Elbing v. Blair (In re Blair)*, 359 B.R. 233, 237 (Bankr. E.D. Wis. 2007) (quoting *Heft v. Moore*, 351 F.3d 278, 283 (7th Cir. 2003).

Courts must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. BANKR. P. 7056, adopting FED. R. CIV. P. 56(a). At the summary judgment stage, the court's role is to determine whether there is a genuine issue for trial. The court need not weigh the evidence to determine the truth. *See Anderson,* 477 U.S. at 249.

The moving party "always bears the initial responsibility" to establish the absence of a genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 323. "When the moving party has carried its burden . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-movant must establish specific facts that show a genuine issue for trial. *See id.* at 587. The inferences drawn from the facts

6

must be viewed in the light most favorable to the non-movant party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The Court cannot consider facts that are not in the record. *Summit Credit Union v. Goldbeck* (*In re Goldbeck*), 590 B.R. 881, 887 (Bankr. W.D. Wis. 2018). But federal courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.,* 971 F.2d 244, 248 (9th Cir. 1992) (quoting *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.,* 605 F.2d 1169, 1172 (10th Cir. 1979)). *See also Green v. Warden, U.S. Penitentiary,* 699 F.2d 364, 369 (7th Cir. 1983). A court may also take judicial notice of its "own records of prior litigation closely related to the case before it." *St. Louis Baptist Temple,* 605 F.2d at 1172.

For summary judgment determinations, the materiality of facts must be determined based on the governing substantive law. *Anderson,* 477 U.S. at 248. In their adversary complaint, Plaintiffs seek an order that Defendant's debt is nondischargeable under 11 U.S.C. § 523(a)(2)(A). The Court must determine whether any genuine issues of material fact exist to except this debt from discharge.

The motion to dismiss argued that, based on the complaint and answer, the complaint must be dismissed for failure to state a cause of action. It also referred to various attachments to the answer that included state court decisions. Soon after filing the motion, Defendant supplemented the filing with

7

various affidavits. Plaintiffs responded with counter-affidavits. The competing affidavits included more than 200 pages of exhibits.

Under Fed. R. Civ. P. 12(d), the motion must be converted to a summary judgment because it relies on matters outside the pleadings to resolve the motion. *United States v. Rogers Cartage Co.*, 794 F.3d 854, 861 (7th Cir. 2015).

Although the motion is labeled as a "motion to dismiss," Defendant effectively converted the motion to a summary judgment standard when he filed affidavits in support of the motion. Plaintiffs Krizan also filed affidavits in response. Defendant is thus only entitled to the requested relief if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323 (citing FED. R. CIV. P. 56).

Defendant's defense is that he did not make any written or oral representations relating to the alleged non-dischargeability Complaint. The Offer to Purchase was not signed by him nor was he part of any conversation, meetings, or activities relating to the Krizans in this matter. Plaintiffs' claims are that, despite the lack of his signature on the offer, he was a knowing and willing participant in a series of actions that constituted fraud. Further, that Defendant was instrumental in creating the fraudulent conduct.

C. Issue Preclusion and Collateral Estoppel

"The doctrine of issue preclusion prevents relitigation of an issue of fact or law previously decided in a judicial proceeding provided the party against whom the prior decision was asserted enjoyed a full and fair opportunity to

litigate that issue in the earlier proceeding." *In re Blair*, 359 B.R. at 237 (citing *Allen v. McCurry*, 449 U.S. 90, 94–95 (1980)). Issue preclusion applies in bankruptcy dischargeability proceedings. *Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir. 1987). Whether issue preclusion applies is a question determined by state law. *In re Bulic*, 997 F.2d 299, 304 n.6 (7th Cir.1993).

Wisconsin uses a two-step analysis for questions of issue preclusion. *In re Blair*, 359 B.R. at 237. "The first step is to determine whether a litigant against whom issue preclusion is asserted is in privity with a party or has sufficient identity of interests to comport with due process." *Id.* (citing *Paige K.B. v. Steven G.B.*, 226 Wis. 2d 210 (1999)). "The next step in issue preclusion analysis is whether applying issue preclusion comports with principles of fundamental fairness. This is generally a discretionary decision, although some of the factors the court is to consider in determining fairness present a question of law." *Id.* "The factors that courts may consider when undertaking the second step of issue preclusion are: (1) could the party against whom preclusion is sought, as a matter of law, have obtained review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue; (4) have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; or (5) are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be

9

fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action?" *Id.* (citing *Michelle T. v. Crozier,* 173 Wis. 2d 681, 689 (1993)).

The standards to applying collateral estoppel are well established. "Indeed, though the federal courts may look to the common law or to the policies supporting res judicata and collateral estoppel in assessing the preclusive effect of decisions of other federal courts, Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so . . . ." *Allen v. McCurry,* 449 U.S. 90, 96, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980).

Wisconsin's Supreme Court has adopted a five-factor "test" for deciding whether to give a finding collateral estoppel effect. *DeGuelle v. Camilli,* 724 F.3d 933, 937 (7th Cir. 2013) (citing *Estate of Rille v. Physicians Ins. Co.,* 2007 WI 36, 300 Wis. 2d 1, 728 N.W.2d 693, 707). "No weight is assigned to any factor; the weighting is in the discretion of the trial court." *Id.* The factors are:

1) Could the party against whom preclusion is sought have obtained review of the judgment as a matter of law;

2) Is the question one of law that involves two distinct claims or intervening contextual shifts in the law;

3) Do significant differences in the quality or extensiveness of proceedings between the two courts warrant re-litigation of the issue;

4) Have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; and

10

> 5) Are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action?

*Id.*

Defendant says the complaint should be dismissed under the doctrine of issue preclusion. Because the Websters defeated the claims of the Plaintiffs and succeeded in the claim that their offer was valid and enforceable, Defendant identifies them as the state court winners. And the Plaintiffs' claim of unjust enrichment against Beverly, Scott, and Daniel was disposed of by the state court of appeals when the Plaintiffs were paid $430,000 at the closing with the Websters. For those reasons, the Defendant concludes dismissal would be appropriate under either issue preclusion or collateral estoppel.

The clear standards applied to judgments when determining preclusion are clear and discernable. Here, the state courts did not make specific findings of fact which would preclude trying the issues. While Plaintiffs did obtain some recovery at the closing with the Websters, that did not constitute specific findings of fact that would require this Court to infer dispositive facts about the issues in this adversary. None of the findings in the state courts determined the misrepresentation or fraud claims asserted by the Plaintiffs. As noted in the Court of Appeals Decision:

> Based on this record, it appears the Intervening Krizans' misrepresentation and fraud claims asserted in the Third Amended Intervention Complaint have been pending since 2015 and have not yet been litigated. We therefore reverse the order dismissing those claims and remand to the circuit court for further proceedings.[10]

---

[10] ECF No. 28, Ex. 8, p. 3.

The claims before this Court are for nondischargeability under section 523(a)(2)(A). This section denies discharge if the debt was for money or property "obtained by false pretenses, false representations, or actual fraud." *Gambino v. Koonce*, 757 F.3d 604, 607 (7th Cir. 2014). Although claims were asserted in the state court between Plaintiffs and Defendant, there was no final judgment or trial on those claims. Before any trial or final hearings were held in state court, the Defendant filed bankruptcy. So the matter has not been actually litigated.

Summary judgment is inappropriate for two reasons: First, the court may not apply the doctrine of collateral estoppel because the issue of the Defendant's actions related to the Plaintiffs' claims has not been actually litigated. Second, there are issues of material fact. The Plaintiffs have submitted affidavits stating that the Defendant acted in concert with Beverly and Scott to obtain money from Plaintiffs, deter Plaintiffs from seeking to pursue fraud claims or to otherwise protect their interests, to otherwise induce them to enter into an offer, and by concealing material facts. However, the Defendant has submitted an affidavit stating that he did not sign the offer made by Plaintiffs, that Plaintiff obtained a return of at least a portion of their money when the Webster offer closed, a petition for review of the decision that the Webster offer was enforceable was denied, and that he did not communicate with Plaintiffs about the offer. Section 523(a)(2)(A) does not require a writing. So the lack of a signature by Defendant is not dispositive. At the time of the offers, for example, Defendant had a life estate interest in the

property. A few days before Plaintiffs' offer, Defendant executed a quitclaim deed "for estate planning purposes only" that granted a life estate to Daniel and Beverly.

Viewing the evidence in a light most favorable to the Plaintiffs, as the non-moving party, there are issues of material fact that must be decided at trial. Defendant has not met his burden of showing there is no genuine dispute as to any material issue of fact.

## CONCLUSION

For these reasons, the Defendant's Motion to Dismiss Adversary Amended Complaint for Failure to State a Cause of Action of Dischargeability Against Dale A. Krizan is denied.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: October 16, 2020

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge